**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DENISE K. GRAY,**

      **Plaintiff,**

                                 **Civil Action 2:09-cv-362**
**vs.**                           **Judge John D. Holschuh**
                                 **Magistrate Judge E. A. Preston Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**OPINION AND ORDER**

Plaintiff, Denise K Gray, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits. This matter is before the Court for consideration of Plaintiff's June 23, 2010 Objections (Doc. 18) to the United States Magistrate Judge's June 9, 2010 Report and Recommendation (Doc. 17), recommending that the Court affirm the decision of the Commissioner denying benefits. For the reasons stated below, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation. Accordingly, the Commissioner's decision is **AFFIRMED.**

**I.**

Plaintiff alleges that she became disabled at the age of 37 from Charcot-Marie-Tooth ("CMT") disease, restless leg syndrome; narcolepsy; and Epstein-Barr virus. On April 12, 2006, Plaintiff filed her application for disability benefits, alleging that she had been disabled since

November 1, 2004.  Plaintiff has past work experience as a cosmetologist.

From 2001 through 2007, Dr. Gaffney, D.P.M., treated Plaintiff's complaints of foot pain.  Plaintiff reported that her foot pain had lasted several years of duration, starting when she was a teenager.  Dr. Gaffney suspected and diagnosed CMT disease.  She continued to prescribe molded ankle-foot orthotics ("MAFO") throughout her treatment of Plaintiff.  In 2004, Dr. Gaffney noted that Plaintiff's cavovarus deformity was "somewhat controlled" with Plaintiff's utilization of the MAFOs.  (R. at 169.)

From June 2001 through October 2007, Dr. Govindan, a neurologist, treated Plaintiff for CMT, peripheral neuropathy, restless leg syndrome, narcolepsy and excessive daytime sleepiness.  In May 2005, Dr. Govindan reported that Plaintiff's "ambulation is unassisted," her "[c]oordination is normal," and that a "[n]eurological examination indicates no progression of [Plaintiff's] condition."  (R. at 158.)  In February 2008, Dr. Govindan reported that a neurological examination indicated "no significant change in [Plaintiff's] muscle atrophy and weakness from the peripheral neuropathy."  (R. at 283.)

In July 2006, Dr. Padamadan examined Plaintiff.  He noted that Plaintiff was "quite brisk in her activities of getting in and out of chair and examination table, and obviously driving."  (R. at 245.)  He also noted that Plaintiff "was able to function quite well for ambulation."  (R. at 246.)  Padamadan concluded that "[w]ith her proper fitting AFO which she has now, she is quite functional."  (*Id*.)

In August 2006, Dr. Saxena, completed a physical residual functional capacity assessment.  She opined that Plaintiff could perform medium exertional work, she could never climb ladders, ropes, or scaffolds, and she could only occasionally climb ramps and stairs, and

she should avoid exposure to hazards.  Dr. Saxena concluded that Plaintiff was only partially credible and that the medical evidence did not support a finding of an impairment as severe as Plaintiff alleged.

From June 2006 through January 2008, Dr. Caveney treated Plaintiff for issues with her right knee.  In January 2008, Dr. Caveney noted that Plaintiff reported that her knee was feeling better.  He also noted that Plaintiff's motion was good and that she had no apprehension.

In August 2008, the administrative law judge ("ALJ") issued his decision.  He determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  He further found that Plaintiff could not perform her past work, but retained the residual functional capacity ("RFC") to perform low stress work activity that requires no more than a light level of physical exertion; affords the option to sit or stand; requires no balancing, ladder-climbing and only occasional performance of other postural movements; affords even, level surfaces for any required walking; and requires no production line type of pace or independent decision-making responsibilities.  Based upon his finding that jobs exist in significant number that Plaintiff could perform, the ALJ concluded that she was not disabled under the Social Security Act.

In her Statement of Errors, Plaintiff asserted that the ALJ erroneously concluded that she did not medically equal Listing 11.14.  Plaintiff maintained that the ALJ should have had a medical expert ("ME") present at the hearing to evaluate the possibility that her CMT met or equaled Listing 11.14.  Plaintiff also asserted that the ALJ failed to fully and properly evaluate Plaintiff's credibility.  The Magistrate Judge, in her Report and Recommendation, concluded that the ALJ's failure to obtain a ME at the hearing to evaluate Listing 11.14 was not erroneous.  The

Magistrate Judge also concluded that the ALJ's credibility determination was not erroneous.  In her Objections, Plaintiff raises no new issues and reasserts the objections raised in her statement of errors.

## II.

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).  Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").  Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice withing which the decision-makers can go either way, without interference by the courts.' " *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal; citation omitted).  Even if supported by substantial evidence, however, " 'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that

– 4 –

error prejudices a claimant on the merits or deprives the claimant of a substantial right.' "

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of*

*Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III.

The first issue before the Court is whether the ALJ erred in failing to obtain a medical

expert for the hearing to evaluate whether Plaintiff's CMT medically equaled Listing 11.14.  The

Magistrate Judge analyzed this issue as follows:

> Plaintiff submits that the ALJ improperly based his decision on his own
> lay opinion, and without the benefit of a medical expert at the hearing.  Plaintiff
> contends that the record contains no medical opinion which expresses that her
> disorganization with motor function is not as severe as the Listings contemplate.

> Plaintiff, in taking issue with the lack of medical evidence regarding the
> severity of her impairment, fails to consider that none of her treating physicians
> prepared a written opinion to the effect that she met the requirements of, or
> medically equaled, the Listing.  The medical evidence Plaintiff submitted took the
> form of treatment notes, forms and similar records rather than actual opinions of
> her treating physicians regarding her condition.  (*See* R. at 146–243, 259–71,
> 280–316.)  Because the exhibits submitted by Plaintiff contain no equivalence
> opinion from any treating physician, the ALJ justifiably relied on the consultative
> examination performed by Dr. Padamadan (R. at 244–50), and the two state-
> agency reviewing physicians, Dr. Saxena and Dr. Derrow.  Both of these
> physicians considered Plaintiff's symptoms associated with CMT, as well as
> restless leg syndrome, and opined that Plaintiff could perform and sustain a range
> of medium and light work.  (R. at 251–58, 273–76.)  *Cf. Fletcher v. Comm'r of*
> *Soc. Sec.*, No. 99-5902, 2000 WL 687658 (6th Cir. May 19, 2000) (ALJ properly
> weighed the evidence from medical records and non-treating consultants where
> none of claimant's treating physicians prepared a written opinion or offered
> testimony); *Peebles v. Chater*, No. 95-5627, 1996 WL 229528, at *5 (6th Cir.
> May 6, 1996) ("[I]n the absence of any evidence from treating physicians . . . the
> ALJ was required to rely on the reports of the consulting physician.").

> Moreover, "[t]he signature of a State agency medical or psychological
> consultant on a . . . [Disability Determination and Transmittal Form] . . . ensures
> that consideration by a physician . . . designated by the Commissioner has been
> given to the question of medical equivalence at the initial and reconsideration
> levels of administrative review."  *Hicks v. Comm'r of Soc. Sec.*, No. 03-5507,

2004 WL 1687945, at *4 (6th Cir. July 27, 2004) (citing Soc. Sec. Rul. 96-6p, 61 Fed. Reg. 34, 466, 34,468 (July 2, 1996)). Here, two Disability Determination and Transmittal Forms appearing in the current record each bear the signature of a qualified physician. (R. at 42–43.) Under existing law, that "professional input" is sufficient to satisfy 20 C.F.R. § 404.1526(b). *See id.*

In her Objections, Plaintiff contends that the state agency consultants' evaluations were not sufficient due to the progressive nature of CMT. Plaintiff asserts that new evidence was submitted after the consultants' evaluations that directly relates to the degree of functional limitation contemplated by Listing 11.14. Specifically, Plaintiff references an Orthosis Evaluation Form completed on June 4, 2007.

This objection is without merit for the reasons set forth by the Magistrate Judge. A state agency physician reviewed the record evidence on March 19, 2007. Less than three months lapsed between the last state agency physician's review and the date the Orthosis Evaluation Form was completed. Plaintiff does not explain why she believes this new evidence is significant to the ALJ's determination of whether her CMT equaled Listing 11.14. As the Magistrate Judge explained,

> A claimant meets the Section 11.14 Listing, peripheral neuropathies, if he or she establishes that the impairment causes "disorganization of motor function as described in 11.04B, in spite of prescribed treatment." 20 C.F.R. pt. 404, subpt. P, App. 1 § 11.14. The Section 11.04B Listing requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." 20 C.F.R. pt. 404, subpt. P, App. 1 § 11.04B. Section 11.00C provides as follows:

> Persistent disorganization of motor function in the form of paresis
> or paralysis, tremor or other involuntary movements, ataxia and
> sensory disturbances (any or all of which may be due to cerebral,
> cerebellar, brain stem, spinal cord, or peripheral nerve
> dysfunction) which occur singly or in various combinations,
> frequently provides the sole or partial basis for decision in cases of
> neurological impairment. The assessment of impairment depends
> on the degree of interference with locomotion and/or interference
> with the use of fingers, hands and arms.

20 C.F.R. pt. 404, subpt. P, App. 1 § 11.00C.

(Report and Recommendation 14–15.)  Nothing in the Orthosis Evaluation Form runs contrary to the ALJ's conclusion that Plaintiff's CMT was not as severe as Listings 11.04 and 11.14 contemplate.  Instead, the only reference to Plaintiff's activity on the form is the practitioner's observation that Plaintiff was an "[a]ctive mother of 3," and his conclusion that Plaintiff's "[c]urrent or expected type of vocational activity" was "[m]oderate."  (R. at 297.)  Accordingly, Plaintiff's objection to the Report and Recommendation is not well-taken and is **OVERRULED**.

The final issue before the Court is whether the ALJ's credibility determination was erroneous.  The Magistrate Judge analyzed this issue as follows:

> In the instant case, the record is replete with objective medical evidence
> indicating that Plaintiff had medically determinable impairments during the
> relevant period.  The ALJ acknowledged these impairments, and further
> recognizes that these impairments "could reasonably be expected to produce some
> of the symptoms that [Plaintiff] has alleged."  (R. at 17.)  The ALJ determined,
> however, that Plaintiff had "significantly exaggerated the debilitating severity of
> her impairment-related symptoms and limitations in order to facilitate contingent
> secondary interests."  (*Id.*)  In making this credibility determination, the ALJ
> properly relied on the record evidence, including objective medical findings and
> Plaintiff's own statements about her daily activities.  *See* 20 C.F.R. §
> 404.1529(c)(2) (objective medical findings are useful in assessing the intensity
> and persistence of a claimant's symptoms) and 20 C.F.R. § 404.1529(c)(3)(i)
> (daily activities may be useful to assess nature and severity of claimant's
> symptoms).
>
> For example, as set forth above, the ALJ relied on the consultative

examination performed by Dr. Padamadan, and the two state agency reviewing physicians, Dr. Saxena and Dr. Derrow.  These doctors, after considering that Plaintiff had atrophy of the calf muscles, clubbed feet, decreased range of motion of her ankle, and AFOs for both feet, all opined that Plaintiff's allegations were "partially credible," but that "[t]he medical evidence does not present as severe an impairment as the claimant is alleging."  (R. at 256, 277.)

Dr. Padamadan's objective findings and medical opinion also provide support for the ALJ's credibility determination regarding Plaintiff's subjective complaints of pain.  Dr. Padamadan found that Plaintiff had good range of motion of the shoulders, elbows, wrists and fingers.  (R. at 246.)  He reported that Plaintiff's "flexion of the fingers was normal up to the proximal palmar creases" and that her "grip strength was satisfactory."  (*Id.*)  In the lower extremities, despite atrophy of the calf muscles, clubbed feet, and decreased ankle motion, Dr. Padamadan indicated that, "with the properly fitted AFO[s], [Plaintiff] was able to function quite well for ambulation."  (*Id.*)

Finally, the ALJ found that Plaintiff's statements regarding her varied activities contradict her allegations concerning the intensity, duration, and limiting effects of her symptoms.  (R. at 18.)  The ALJ noted that Plaintiff continues to make lunches for the family, get the children off to school, cook meals, do laundry and other chores, go on walks, drive, and shop.  (*Id.*; R. at 96-98.)  The ALJ also noted that, in a June 2007 medical record, Plaintiff was indicated to be "an 'active' mother of three."  (R. at 18) (citing a notation by the practitioner who evaluated Plaintiff for AFOs (R. at 297.)).

Based upon the foregoing, the undersigned finds that the ALJ's assessment of Plaintiff's credibility was based on consideration of the entire record and is supported by substantial evidence.  Accordingly, applying the applicable deferential standard of review, the undersigned concludes that the ALJ's credibility determination was not erroneous.

(Report and Recommendation 18–20.)

In her Objections, Plaintiff re-asserts that the ALJ's credibility determination is not supported by substantial evidence.  She maintains that the main rationale the ALJ advanced to support his determination is flawed because it ignores the progressive nature of Plaintiff's disease.  Plaintiff also asserts that the ALJ's conclusion that Plaintiff exaggerated her disability in order to stay at home with her third child is entirely speculative and illogical.

– 8 –

The Court agrees with the Magistrate Judge's determination that substantial evidence supports the ALJ's credibility determination. The Magistrate Judge set forth the standards governing an ALJ's credibility assessment as follows:

> "The ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 Fed. Appx. 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed.Appx. 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)).

> This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987)). In *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986), the Court of Appeals for the Sixth Circuit established the following test for evaluating complaints of disabling pain. First, the Court must determine "whether there is objective medical evidence of an underlying medical condition." If so, the Court must then

>> examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

> *Duncan*, 801 F.2d at 853.

> Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. The ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. Furthermore, in assessing credibility, the ALJ may consider a variety of factors including "the location, duration, frequency, and intensity of the symptoms; . . . [and] the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms . . ." *Rogers*, 486 F.3d at 247.

(Report and Recommendation 17–18.)

In her Objections, Plaintiff makes much of the ALJ's statement that, "[p]erhaps of most significance to this determination is the fact that claimant continued to perform and sustain 'substantial gainful activity' for a full two years or more after she was indicated to have possible Charcot-Marie Tooth disease."  (R . at 17.)  Plaintiff, however, takes this statement out of context.  In support of the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her impairment-related symptoms were only partially credible, he also found that her asserted basis for departing the workforce was not credible.  The quoted statement relates to this determination.  In the preceding paragraph, the ALJ explained that Plaintiff had permanently departed from the workforce in November 2003, just after she had her third child.  Although she left the workforce in November 2003, she did not assert the onset of any compensable disability until approximately one year later, and she did not apply for disability benefits until nearly two and one-half years after she had stopped working.  The ALJ also noted that Plaintiff reported significant foot problems in May 2001, reporting that her feet had hurt her since she was a teenager.  He further noted that in 2002, Dr. Gaphery wrote that Plaintiff would need to do exercises for the rest of her life, but he did not consider her CMT to be disabling, and he advised Plaintiff to pursue a career that did not require Plaintiff to be on her feet as much.  Finally, the ALJ noted that in June 2003, just months before Plaintiff left the workforce, her CMT was noted to be controlled with braces.  Then, after making the at-issue statement, the ALJ pointed out that Plaintiff did not follow Dr. Gaphery's advice that she pursue a career that did not require her to be on her feet as much.  The ALJ noted that instead, Plaintiff had her most lucrative year of employment in 2002 and also made a significant amount of money in 2003, despite only working a partial year.  Thus, the ALJ concluded that the reason Plaintiff

advanced for leaving the workforce was not credible.

The ALJ then set forth his other bases for discounting Plaintiff's credibility as it relates to her statements concerning the intensity, persistence, and limiting effects of her impairment-related symptoms.  These other bases included objective medical findings and Plaintiff's own statements about her activities of daily living.

Upon a *de novo* review, the Court agrees with the Magistrate Judge that the ALJ's assessment of Plaintiff's credibility was based upon his consideration of the entire record and is supported by substantial evidence. Accordingly, Plaintiff's second objection to the Report and Recommendation is not well-taken and is **OVERRULED**.

## IV.

The Court, having reviewed the record *de novo*, determines that there is substantial evidence supporting the ALJ's determination that Plaintiff is not disabled, as defined in the Social Security Act.  Accordingly, the Court **OVERRULES** Plaintiff's Objections (Doc. 18) and **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 17).  The Commissioner's decision is **AFFIRMED,** and this action is **DISMISSED**.

The Clerk shall enter final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: September 16, 2010                              **/s/ John D. Holschuh**
                                                      John D. Holschuh, Judge
                                                      United States District Court